PER CURIAM.
The plaintiff, Ocean Beach Resort, Inc. [Ocean Beach], appeals the final judgment rendered in favor of the defendants, the single unit owners, and the order denying its motion for rehearing. We affirm in part, reverse in part and remand with instructions.
The Ocean Beach Resort, a Motel Condominium [condominium], consists of sixty-six units which were converted from a motel in 1982 by the original developer. In 1984, each of the three defendants purchased a unit from the original developer. The original developer filed for bankruptcy and, as a result, the lender instituted a foreclosure action against the unsold units upon which it still had a lien. Ocean Beach, the successor developer, purchased the remaining unsold sixty-two units at the foreclosure sale in 1986. Subsequent to its purchase, Ocean Beach spent approximately $400,-000.00 in repairs and renovations.[1] Of the $400,000.00 spent, $204,580.00 was included in a special assessment. Accordingly, the association levied a special assessment against each of the unit owners. This special assessment included $3,099.70 (product of $204,580.00 expenditure divided by sixty-six, the number of units) for repairs, $138.66 for prepayment of two months regular maintenance assessments as working capital, and $415.00 as a reserve contribution for roof and plumbing repairs.[2]
The defendants refused to pay the special assessment and the association filed claims of lien. The liens were assigned to Ocean Beach and Ocean Beach filed an action to foreclose on the special assessment liens. The trial court entered a judgment in favor of the defendants finding that the expenditures comprising the disputed special assessment were development costs which must be borne exclusively by Ocean Beach, the subsequent developer. The trial court also denied Ocean Beach’s motion for rehearing. Ocean Beach appeals.
In its final judgment, the trial court found that Ocean Beach expended monies for the repair and renovation of its sixty-two units and not towards any improvements which the association, and ultimately the unit owners, would be responsible. In declaring the entire special assessment null and void, the trial court must have determined that none of the items contained within the special assessment were properly assessable against the unit owners.[3]
Addressing the $204,580.00 allegedly spent on repairs, we find that there is no substantial competent evidence to support the conclusion that none of these expenditures were for common elements. Therefore, we reverse and remand with instructions to the trial court to determine what portion of the $204,580.00 was spent in maintaining, repairing or replacing the common elements. Upon remand, the sixty-six unit owners will be responsible for *365 all amounts found to be expended for maintaining, repairing or replacing the common elements. See §§ 718.103(1) (defining “assessment”), 718.103(6) (defining “common elements”), 718.103(16) (defining “limited common elements”), 718.108, 718.115(1), 718.116, Fla.Stat. (1989); see also Cottrell v. Thornton, 449 So.2d 1291 (Fla. 2d DCA 1984) (evidence presented that repairs were necessary to restore condominium property and not material alterations of common elements).
Next, we turn to the portion of the assessment for contributions to the roof and plumbing reserve account. Section 718.618(1), Florida Statutes (1985), requires that “[w]hen existing improvements are converted to ownership as a residential condominium, the developer shall establish reserve accounts for capital expenditures and deferred maintenance.” The developer is obligated to fund a plumbing reserve account and a roof reserve account. § 718.-618(l)(a), Fla.Stat. (1985). We must agree with the defendants that the obligation to fund these reserve accounts is exclusively the obligation of the developer. However, we must agree with Ocean Beach that it was the original developer’s obligation and not the obligation of the successor developer to fund these reserve accounts. See Fla.Admin.Code Rule 7D-15.07 (1985) (describing when the term “developer” shall include “successor developer”) (current version at Fla.Admin.Code Rule 7D-15.007 (1990)). For the foregoing reasons, we find that the trial court properly invalidated that portion of the special assessment for contributions to the reserve account. Therefore, we affirm the final judgment insofar as it declares null and void the portion of the special assessment which contributes to the roof and plumbing reserve account.
Finally, we turn to the portion of the assessment for prepayment of two months regular maintenance assessments as working capital. Based on the record evidence and the fact that the association was not required to levy a special assessment to collect regular maintenance fees,[4] we interpret this part of the special assessment as a contribution to the deferred maintenance account. As previously stated, section 718.618(1), Florida Statutes (1985), requires a developer, not the unit owners, to establish a reserve account for deferred maintenance. The unit owners will contribute to the future maintenance of the common elements through their monthly maintenance fees. Thus, we affirm the final judgment insofar as it declares null and void the portion of the special assessment which contributes to the deferred maintenance account.
Affirmed in part, reversed in part and remanded with instructions.

.At a meeting of the Ocean Beach Resort Condominium Association, Inc. [association], held on April 10, 1986, Ocean Beach and the association agreed that Ocean Beach would advance the funds necessary to effectuate certain renovations and would be responsible for the work. In turn, the association agreed to make a special assessment such that the unit owners would be responsible for their proportionate share of the renovations.

. These figures are taken from the notice of a special meeting of the association held on September 2, 1987.

. Article nine, section 3 of the condominium’s by-laws states, and both parties agree, that the association may levy assessments only for the maintenance, repair or replacement of common elements or limited common elements in the condominium.

. Article nine, section 3 of the hy-Iaws authorizes the association to make and collect assessments to maintain, repair and replace the corn-mon elements and the limited common elements from each unit owner monthly in advance.